**Luke C. MILEY, Claimant–Appellant,**

v.

**Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.**

**No. 00–7104.**

United States Court of Appeals, Federal Circuit.

March 12, 2001.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

William L. Olsen, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were David M. Cohen, Director; and Kathryn A. Bleecker, Assistant Director. Of counsel on the brief were Donald E. Zeglin, Deputy Assistant General Counsel; and Michelle Doses Bernstein, Attorney, Department of Veterans Affairs, of Washington, DC.

Before BRYSON, Circuit Judge, PLAGER, Senior Circuit Judge, and DYK, Circuit Judge.

BRYSON, Circuit Judge.

This is an attorney fee case that comes to us from the Court of Appeals for Veterans Claims. The veteran, appellant Luke C. Miley, petitioned for an award of attorney fees attributable to the filing of a writ of mandamus in the Court of Appeals for Veterans Claims. The court held that Mr. Miley had not made a sufficient showing that he was entitled to fees for that filing and therefore denied his petition. We vacate and remand.

## I

The claim for benefits that underlies the fee petition at issue in this case has a lengthy history. Mr. Miley, who served on active duty in the military between 1946 and 1948, made a claim for veterans' benefits, which resulted in a rating decision in March 1949 for residuals of two injuries, both evaluated as 30 percent disabling. Later proceedings, including a 1991 decision of the Board of Veterans' Appeals (BVA), resulted in increases in the ratings for his service-connected injuries and a rating of total disability based upon individual unemployability. In April 1996, Mr. Miley asserted an additional claim that there was clear and unmistakable error (CUE) in the March 1949 rating decision.

In the usual proceeding, once a veteran submits a claim for benefits and any evidence supporting his claim, a regional office of the Department of Veterans Affairs issues a rating decision. That decision is supposed to notify the veteran of his appellate rights. 38 U.S.C. § 7105(a); 38 C.F.R. § 19.25. If the veteran disagrees with the rating decision, he may then file a notice of disagreement (NOD). After a NOD is timely filed, the regional office must reexamine the claim and determine whether additional review or development is warranted. 38 U.S.C. § 7105(d)(1); 38 C.F.R. § 19.26. If reexamination of the claim does not resolve the disagreement, the regional office must then prepare a Statement of the Case (SOC) summarizing the evidence, citing any pertinent laws and regulations, discussing how those laws and regulations affect the agency's decision, and rendering a decision on each issue. 38 U.S.C. § 7105(d)(1)-(2); 38 C.F.R.

§§ 19.26, 19.29. The SOC is also supposed to notify the veteran of his appellate rights. 38 U.S.C. § 7105(a); 38 C.F.R. § 19.25. The veteran perfects his appeal by completing and submitting a VA Form 9, entitled "Appeal to Board of Veterans' Appeals." 38 U.S.C. § 7105(d)(3); 38 C.F.R. § 19.30(b). The regional office must then certify the case to the BVA, transfer the record, and notify the veteran of the certification and transfer. 38 U.S.C. § 7105(d)(3); 38 C.F.R. §§ 19.35, 19.36.

Pursuant to this regulatory regime, the pertinent regional office issued a rating decision denying Mr. Miley's April 1996 CUE claim on the ground that it was subsumed by the BVA's 1991 decision. Although that rating decision apparently failed to notify Mr. Miley of his appellate rights, Mr. Miley timely filed a NOD on May 15, 1996. The regional office, however, did not prepare an SOC on Mr. Miley's CUE claim, and for that reason, Mr. Miley could not properly perfect his appeal to the BVA on the CUE issue. Nonetheless, the question whether Mr. Miley's CUE claim was subsumed by the BVA's 1991 decision was briefed in a subsequent appeal to the BVA on Mr. Miley's other benefits claims. The BVA, recognizing that the regional office had failed to issue an SOC, "referred" the matter back to the regional office for issuance of an SOC in November 1996.

Then things began to get complicated. Mr. Miley appealed the BVA's November 1996 referral order (among other issues) to the Court of Appeals for Veterans Claims. Mr. Miley argued that the CUE claim should have been remanded to the regional office with directions to issue an SOC rather than being "referred" to the regional office. 38 C.F.R. § 19.9. In April 1997, the court granted a joint motion to remand Mr. Miley's CUE claim, directing the BVA to "remand," rather than "refer," the CUE claim to the regional office. In response, the BVA in April 1998 remanded the issue to the regional office requesting that the regional office furnish Mr. Miley with an SOC on the issue of whether the March 1949 rating decision was clearly and unmistakably erroneous and to inform Mr. Miley of his appellate rights. In the interim, however, the regional office had issued an SOC as to that issue and a notice of appellate rights in response to the BVA's earlier order "referring" the issue back to the regional office. Mr. Miley, in turn, had submitted in December 1997 a letter in lieu of a VA Form 9, requesting substantive review of the CUE issue by the BVA. The regional office took no further action at that point, and it did not certify the issue for appeal.

After the April 1998 remand from the BVA, Mr. Miley's representative filed three additional NODs with the regional office clarifying errors in his CUE claim. Subsequently, in December 1998, the regional office issued a supplemental SOC in which it reiterated its position that it did not have jurisdiction over Mr. Miley's CUE claim because Mr. Miley's claim was subsumed by the BVA's June 1991 decision. That supplemental SOC did not contain a notice of the veteran's appellate rights.

In early 1999, Mr. Miley's representative wrote to the regional office asking the regional office to issue an SOC pursuant to the BVA's remand order, to respond to his April 1998 NODs, and to include a statement of appellate rights. On April 13, 1999, the regional office responded that the October 1997 SOC complied with the remand order and that Mr. Miley's letter of December 1997 had already been accepted as a VA Form 9, perfecting the appeal. On May 24, 1999, the regional office issued another letter stating that it considered that it had complied with the BVA's remand order and that Mr. Miley's claim file was being transferred to the BVA. A week later, on June 1, 1999, the BVA docketed Mr. Miley's appeal, although Mr. Miley states that he was not then aware of the BVA's action.

On June 28, 1999, Mr. Miley filed a petition for a writ of mandamus with the

Court of Appeals for Veterans Claims, urging the court to direct the regional office to issue an SOC, including notice of his appellate rights, in response to his May 1996 NOD and his April 1998 NODs; dispose of the remanded case expeditiously; and comply with the remand instructions from the BVA and the court. The petition made no reference to the docketing of the appeal in the BVA earlier that month.

The Court of Appeals for Veterans Claims on July 7, 1999, directed the Secretary to respond to the mandamus petition within 30 days. Before the expiration of the 30–day period, the BVA issued a decision on the appeal that had been docketed on June 1, 1999. In that decision, the BVA held that the March 1949 rating decision was not subsumed by the BVA's June 1991 decision. Accordingly, on August 2, 1999, the BVA entered an order remanding the case to the regional office for a decision on the merits of Mr. Miley's CUE claim. The BVA also directed that if the benefit sought is not granted, the regional office should furnish Mr. Miley and his representative with an appropriate supplemental SOC and should then certify the issue for appeal to the BVA. The BVA added that the claim "must be afforded expeditious treatment" by the regional office. Several days later, the Secretary responded to the petition for mandamus, arguing that Mr. Miley's claim was moot because the regional office had already performed all the acts it was required to perform and, in any event, the BVA in its August 2, 1999, order had remanded the case to the regional office for expeditious adjudication. Mr. Miley agreed that in light of the BVA's August 2 order, the petition was moot. The court thereupon dismissed the petition on mootness grounds.

Mr. Miley then filed an application to recover attorney fees for the mandamus action under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). In arguing that he had satisfied EAJA's requirement that a fee petitioner be the "prevailing party," Mr. Miley invoked the so-called "catalyst" theory, contending that even though his petition was not granted by the court, it caused the agency to take action that it otherwise would not have taken. The agency opposed the fee application, arguing that "[a]lthough the timing of events during a lawsuit can be significant in determining whether the lawsuit had a catalytic effect for EAJA purposes," the mere existence of a temporal coincidence between the lawsuit and the desired agency action cannot alone suffice to justify an award under the catalyst theory of recovery.

The court denied the application for fees. The court recognized the general rule that an EAJA petitioner can prevail on the catalyst theory if the petitioner can show (1) that there is a causal relationship between the litigation and the relief ultimately obtained, and (2) that the agency did not act "gratuitously" in granting the requested relief. With regard to the first prong of that test, the court ruled that the fee applicant must show that it is more probable than not "that the government would not have provided the desired relief in the absence of the litigation." The court further observed that "the timing of events during a lawsuit can be significant in determining whether the lawsuit had a catalytic effect for EAJA purposes," but the "mere existence of a temporal coincidence" cannot alone suffice "to engage the gears of the catalyst test."

The court noted that Mr. Miley's showing was predicated "only on his averment that after the Court ordered the Secretary to respond to [Mr. Miley's] petition for a writ, the requested relief (more than two years delayed) occurred." The court pointed out that Mr. Miley had not pointed to any court order, concession of error by the Secretary, or direct evidence showing a causal connection between the writ and the relief obtained, but instead had relied only on an inference based on the chronology of events. That inference, the court concluded, was insufficient to satisfy Mr.

Miley's burden to show that he was the prevailing party within the meaning of EAJA.

## II

Invoking our appellate jurisdiction under 38 U.S.C. § 7292, Mr. Miley argues that the Court of Appeals for Veterans Claims made an error of law in construing the EAJA statute, because it mischaracterized the principles applicable under the "catalyst test" for determining whether a fee applicant was the "prevailing party" in the underlying litigation. In particular, he contends that the court was wrong in ruling that an inference of causation cannot properly be drawn from the timing of events, standing alone.

In response, the government contends that the court did not adopt the legal rule to which Mr. Miley objects, but instead merely ruled that on the facts of this case Mr. Miley failed to establish his right to relief under the catalyst theory. We disagree with the government's characterization of the basis for the court's ruling. The court remarked that temporal coincidence cannot alone suffice and it observed that Mr. Miley's showing was predicated only on the timing of events in the case and did not include any other evidence "showing a causal connection between the writ and the relief obtained." Those comments seem to us to indicate with reasonable clarity that the court regarded timing alone as legally insufficient to establish a *prima facie* case of entitlement to relief under any circumstances. That conclusion is consistent with previous decisions of the Court of Appeals for Veterans Claims, in which that court has consistently ruled that the sequence of events, standing alone, cannot suffice to justify an attorney fee award under the catalyst theory. *See Weierbach v. West,* 12 Vet.App. 486, 488 (1999); *Chandler v. Gober,* 11 Vet.App. 6, 8 (1997).

On the merits, the government does not defend the position that timing alone can never give rise to an inference of causa-tion sufficient to satisfy the petitioner's burden under EAJA. Instead, the government acknowledged at oral argument that in appropriate circumstances the timing of the relief granted, in light of the timing of the litigation and the lack of pre-litigation action on the part of the agency, could constitute a *prima facie* showing of causation and justify imposing a burden on the government to offer evidence rebutting the applicant's showing. We agree with the government (and Mr. Miley) that the catalyst theory requires a showing of causation, and that there is no absolute prohibition against basing such a showing on timing alone. Thus, in *Public Citizen Health Research Group v. Young,* 909 F.2d 546 (D.C.Cir.1990), the court noted that the basic inquiry under the catalyst theory is one of causation, and that in the absence of alternative explanations, a lawsuit followed by agency action can be strong evidence of causation. *Id.* at 551 (citing *Save Our Cumberland Mountains, Inc. v. Hodel,* 826 F.2d 43, 51 (D.C.Cir. 1987)); *see also Hooper v. Demco, Inc.,* 37 F.3d 287, 292 (7th Cir.1994) ("In light of the close proximity of time between the filing of the suit and the settlement (two weeks), the suit seems to have acted as a 'catalyst' for the settlement and thus satisfies the causal link requirement."); *Sablan v. Dep't of Finance,* 856 F.2d 1317, 1325–26 (9th Cir.1988) (district court did not commit clear error "in inferring from th[e] sequence of events a causal connection between [the plaintiff's suit] and the government's change in [policy]"); *Koppel v. Wien,* 743 F.2d 129, 135 (2d Cir.1984) ("Plaintiffs' undisputed facts as to the sequence of events almost entitle them to summary judgment on the issue of causation."); *Posada v. Lamb County,* 716 F.2d 1066, 1072 (5th Cir.1983) ("Clues to the provocative effects of the plaintiffs' legal efforts are often best gleaned from the chronology of events...."); *United Handicapped Fed'n v. Andre,* 622 F.2d 342, 347 (8th Cir.1980) ("The chronological sequence of events is an important factor in determining whether or not it can be inferred that the defendants guided their

actions in response to plaintiffs' lawsuit."); *Center for Auto Safety v. Dole,* 595 F.Supp. 98, 102 (D.D.C.1984) ("[g]iven the sequence of events here, and the [agency's change of position]" the causation requirement of EAJA was satisfied); *cf. Robinson v. Kimbrough,* 652 F.2d 458, 465 (5th Cir.1981) (court in prior case awarded attorney fees under 42 U.S.C. § 1988 "because the chronology of events revealed that plaintiffs' lawsuit had vindicated the plaintiffs' civil rights by activating defendants to modify their behavior").

Of course, in some cases the circumstantial evidence provided by timing alone will not be strong enough to establish a *prima facie* case of causation. And in other cases, the *prima facie* case of causation may be rebutted by other evidence indicating that the government action was not provoked by the litigation. *See, e.g., Beach v. Smith,* 743 F.2d 1303, 1306 (9th Cir.1984) (reliance on sequence of events insufficient in light of agency's evidence that action was taken for reasons other than the plaintiff's lawsuit); *Citizens Coalition for Block Grant Compliance v. City of Euclid,* 717 F.2d 964, 967 (6th Cir.1983) (chronological evidence insufficient to prove causation in light of agency's prelitigation activities and "predisposition to achieve compliance despite the [plaintiff's] activities").

In support of its legal ruling, the Court of Appeals for Veterans Claims cited one of its prior decisions, which in turn cited the First Circuit's decision in *Langton v. Johnston,* 928 F.2d 1206 (1st Cir.1991), for the proposition that the "mere existence of a temporal coincidence . . . cannot alone suffice" to prove causation. That statement, however, followed the court's statement that "[c]hronology . . . is neither the be-all nor the end-all," *id.* at 1225, and was made in the context of the court's upholding a trial court decision that causation was not shown in the case before it. Thus, the court's holding in *Langton* appears to have been simply that chronology is not *always* sufficient to establish causation; the court's decision does not support the more sweeping proposition that that chronology can *never* give rise to an inference of causation.[1] We therefore vacate the order denying Mr. Miley's fee application and remand the case to the Court of Appeals for Veterans Claims for that court to determine, under the correct standard, whether Mr. Miley's fee application should be granted.

*VACATED and REMANDED.*

---

**1.** One court of appeals has held, based on the Supreme Court's decision in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), that the "catalyst" theory is no longer a valid basis on which a party can establish that it was the "prevailing party" for purposes of an attorney fee application under 42 U.S.C. § 1988. *See S–1 & S–2 v. State Bd. of Educ.,* 21 F.3d 49 (4th Cir.1994) (en banc). Other circuits have not followed that interpretation of the *Farrar* case. *See, e.g., Beard v. Teska,* 31 F.3d 942, 951 & n. 9 (10th Cir.1994) (citing cases). The Supreme Court has recently granted certiorari to address the conflict among the circuits on that point. *See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.,* 203 F.3d 819 (4th Cir.), *cert. granted,* 530 U.S. 1304, 121 S.Ct. 28, 147 L.Ed.2d 1050 (2000). Because the Court of Appeals for Veterans Claims did not suggest that the Fourth Circuit's rationale should be applied to the EAJA case before it and because the government has not advanced that argument, we decline to address that issue.