**FREEDOM, N.Y., INC., Plaintiff,**

v.

**THE UNITED STATES, Defendant.**

No. 00–237C.

United States Court of Federal Claims.

July 10, 2001.

Norman A. Steiger, Rockville Centre, NY, for plaintiff.

Jan M. Folena, Washington, DC, with whom was Acting Assistant Attorney General Stuart E. Schiffer, for defendant. Kathleen D. Hallam, Defense Supply Center, Philadelphia, PA, of counsel.

## ORDER

MILLER, Judge.

This case is before the court on plaintiff's application for attorneys' fees incurred in pursuing a separate award for attorneys' fees. A government contractor obtained an award of attorneys' fees, which the Government refused to pay under a right of setoff. The contractor now argues that it is a "prevailing party" within the meaning of the Equal Access to Justice Act, 28 U.S.C.A. § 2412 (West Supp.2000) (the "EAJA"), because it only obtained payment of the award after suit was filed to enforce payment of fees awarded over two years earlier. The issue devolves to whether the Government's position that an EAJA award is subject to setoff is substantially justified. Argument is deemed unnecessary.

## FACTS

On November 15, 1984, Freedom, N.Y., Inc. ("plaintiff"), was awarded fixed-price Contract No. DLA13H–85–C–0591 by the Defense Personnel Support Center of the Defense Logistics Agency (the "DLA"). The contract was for the supply of individual ready-to-eat meals. On June 22, 1987, the Government terminated the contract for default. On June 20, 1991, the contracting officer issued a final decision informing plaintiff that it was indebted to the United States in the amount of $1,630,747.28 ("$1.6 million") for progress payments made under the contract.

Plaintiff appealed the contracting officer's decision to the Armed Services Board of Contract Appeals (the "ASBCA"), and the DLA asserted its counterclaim of $1.6 million. In 1996 the ASBCA issued a decision that the Government's termination was wrongful and awarded fees to plaintiff pursuant to the EAJA. On August 5, 1998, plaintiff and the Government stipulated to the amount of $75,050.00 for fees due plaintiff in connection with plaintiff's challenge to the Government's termination for default.

Despite this stipulation, the Government continued to assert that plaintiff owed $1.6 million to the United States and refused to remit the EAJA fees to plaintiff or plaintiff's attorney, taking the position that the Government could exercise its common law right to offset the indebtedness still owing by plaintiff.

Effective September 27, 1996, the Defense Contract Management Command, New York (the "DCMC") represented the Government in responding to plaintiff's termination for convenience proposal. After plaintiff submitted its proposal on December 18, 1997, the parties engaged in a colloquy for over two years, with plaintiff submitting proposals that the "Terminating Contracting Officer" (the "TCO") deemed incomplete, which plaintiff protested; auditing of plaintiff's proposal; and negotiating a method to resolve questioned costs. As of September 1, 2000, the parties were engaged in settlement negotiations. As of October 2000, the TCO con-

ceded that plaintiff would be due a net payment.

On April 27, 2000, plaintiff had filed a complaint in the United States Court of Federal Claims seeking payment of the $75,050.00 EAJA award. Defendant moved for summary judgment on August 25, 2000, arguing that it was entitled to setoff the EAJA award against the amount owed by plaintiff. Plaintiff's opposition was filed on September 21, 2000. Thereafter, the parties reached a tentative agreement on the amount due under the termination for convenience, which would result in a net payment to plaintiff. The Government issued payment of the agreed-to EAJA amount to plaintiff on November 30, 2000. The settlement agreement covering all remaining issues was signed on December 29, 2000, and plaintiff's complaint was dismissed on February 1, 2001.

Plaintiff colorfully summarizes the prior two years' interplay, during which the EAJA award remained unpaid, as follows: "[T]he Government 'explains' that it took two years to arrive at the inexorable mathematical conclusion that [plaintiff] should receive its EAJA fees, but that [plaintiff's] lawsuit had nothing to do with the Government's eventual conclusion." Pl.'s Br. filed May 10, 2001, at 2.

The present claim for attorneys' fees represents monies expended in pursuit of the $75,050.00 EAJA award ("the original EAJA award"). This claim filed on March 9, 2001, seeks $33,345.24 in EAJA fees ("the second EAJA award"). Proving that, indeed, "one must spend money to make money," plaintiff is seeking attorneys' fees for money spent collecting attorneys' fees.

## DISCUSSION

### 1. *The Equal Access to Justice Act*

The EAJA sets forth a cause of action for attorneys' fees and costs: The court "shall award to a prevailing party other than the United States fees and other expenses ...

unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C.A. § 2412(d)(1)(A). Defendant does not dispute that plaintiff qualifies as an "eligible" [1] party within the meaning of the EAJA. The remaining issues are whether plaintiff was a "prevailing party," within the contemplation of the EAJA, and whether the Government's position was "substantially justified." Defendant also challenges the calculation of plaintiff's claimed fees and costs.

### 2. *Prevailing party*

■ In order to demonstrate that it is a prevailing party, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant.... The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (citations omitted). "A court should look to the substance of the litigation to determine whether an applicant has substantially prevailed in its position, and not merely the technical disposition of the case or motion." *Devine v. Sutermeister,* 733 F.2d 892, 898 (Fed.Cir.1984) (emphasis omitted).

Plaintiff offers an argument based on the "catalyst theory" to show that the filing of his lawsuit caused the DLA to take action that it otherwise would not have taken. The Federal Circuit has recently supplied guidance on the "catalyst theory." In *Miley v. Principi,* 242 F.3d 1050 (Fed.Cir.2001), the court stated that "the catalyst theory requires a showing of causation, and ... there is no absolute prohibition against basing such a showing on timing alone." *Id.* at 1054. It is such evidence of timing that plaintiff offers here. However, the Federal Circuit also stated that "in some cases the circumstantial evidence provided by timing alone will not be strong enough to establish a prima facie case of causation." *Id.* at 1055. Further, "the

---

**1.** A "prevailing party" must demonstrate that it is eligible to receive an award of attorneys' fees. Pursuant to section 2412(d)(1)(B) of the EAJA, an "eligible" party includes, *inter alia*, a corporation "the net worth of which did not exceed

$7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed ...." 28 U.S.C.A. § 2412(d)(2)(B).

prima facie case of causation may be rebutted by other evidence indicating that the government action was not provoked by the litigation." *Id.*

The substance of the litigation in the lawsuit that preceded plaintiff's claim consists only of a complaint, a motion for summary judgment by defendant, and an opposition brief from plaintiff. The pre-litigation history extends further back in time. The documents of record reveal that the parties were engaged in spirited negotiations over a number of years. According to the correspondence, the parties were proceeding at a regular pace, exchanging documents and working toward resolution of all outstanding monetary issues. In this context plaintiff points to the timing of his application for the second EAJA award to make a showing of causation under the catalyst theory.

Plaintiff notes that the DLA maintained the position since April 30, 1998, that plaintiff was not entitled to the original EAJA award. The DLA reaffirmed this position on December 7, 1999, and on February 23, 2000. On April 27, 2000, plaintiff filed an action seeking payment of the original EAJA award. The Government then issued payment of the original EAJA amount to plaintiff on November 30, 2000. Thus, on the basis of timing alone, plaintiff has established a prima facie case for causation.

Although plaintiff has made the required initial showing, a closer examination of the evidence reveals that "the government action was not provoked by the litigation." *Miley,* 242 F.3d at 1055. Instead, the guiding principle behind the DLA's decision to pay any amounts that plaintiff claimed was whether those amounts were supported by sufficient documentation. From the beginning of the negotiations with plaintiff on the termination for convenience, the Government maintained that plaintiff was not entitled to any award because the amounts owing to the contractor had not been substantiated. On July 28, 1998, plaintiff acknowledged that "termination operating policy directs that [there be an] audit review" of any proposed settlement.

The record shows that it was not until December 26, 1998, that plaintiff submitted a proposal. A revised settlement proposal was tendered on January 18, 1999. Thereafter, on September 10, 1999, a Defense Contract Audit Agency ("DCAA") audit was completed and sent to TCO James Ljutic.

The DCAA audit questioned a number of aspects of plaintiff's proposal. First and foremost, of the net payment of $10,688,279.00 proposed by plaintiff, the DCAA deemed that $10,411,917.00 represented "questioned" costs and that the "cost or pricing data submitted by [plaintiff] are inadequate in-part [sic]." The audit concluded that plaintiff's accounting system was "inadequate" and noted the need for "contemporaneous financial statements" to increase the validity of plaintiff's proffered records. TCO Ljutic forwarded the DCAA audit to plaintiff on October 12, 1999, requesting additional documentation to substantiate plaintiff's proposal. This letter was the opening salvo in plaintiff's excoriation of the DLA for delaying payment of plaintiff's award.

Plaintiff replied to TCO Ljutic requesting that DCAA "correct" its audit so that plaintiff could "appeal this dispute to the ASBCA as soon as possible." TCO Ljutic informed plaintiff that there was nothing to appeal and renewed his October 12, 1999 requests for information. Plaintiff refused to so respond, asserting that it had "*already*[2] provided adequate supporting documentation." TCO Ljutic wrote plaintiff on December 22, 1999, stating that the requested information "is necessary . . . to construct an offer of settlement."

Henry Thomas, plaintiff's President, responded to the December 22, 1999 letter four times—on December 22, 23, 24, and 27, 1999. This correspondence accused Mr. Ljutic of "*making up your own rules*" and "**over stepping your authority.**" Mr. Thomas stated that he was "*shocked*" to receive Mr. Ljutic's "inflammatory" letter. Mr. Thomas also offered to "personally march Freedoms [sic] books and records into the office of the FBI at 26 Federal Plaza, N.Y.[sic] N.Y.," if

---

2. Plaintiff's President Henry Thomas authored all of plaintiff's correspondence discussed herein,

and the emphasis noted appears in the original.

Mr. Ljutic believed that plaintiff had committed *"fraud"* or had "filed a *false claim."*

This correspondence shows that the impediment to settlement was a lack of documentation from plaintiff. The letters demonstrating the position of the DLA both before and after plaintiff filed suit in the Court of Federal Claims are sufficient to rebut plaintiff's prima facie showing of causation. For example, on February 23, 2000, TCO Ljutic wrote to his team leader at the DCMC and reported that the DCAA still questioned approximately $10,411,917.00 in costs submitted by plaintiff. Plaintiff filed its complaint on April 27, 2000. On September 1, 2000, Mr. Ljutic submitted a settlement offer that did not allow credit for the questioned amounts. This settlement offer states that "[d]isallowances are exactly as stated in [the original] DCAA Audit report," with the exception of those items for which plaintiff had provided subsequent contemporaneous documentation. In other words, the DLA did not credit those amounts in the original DCAA audit that lacked documentation, but did credit those amounts that plaintiff had substantiated. Thereafter, the DLA determined that plaintiff was owed a monetary award, and on November 8, 2000, TCO Ljutic sent plaintiff invoices totaling $799,947.00. On November 30, 2000, the original EAJA award was processed in the amount of $75,050.00. A final settlement of all amounts was signed on December 29, 2000.

This final exchange of letters demonstrates that, once the Government was given an opportunity to examine the underlying documentation on plaintiff's claim and confirmed that plaintiff was owed a net payment, the original EAJA award was processed and paid. It was this occurrence, and not plaintiff's lawsuit, that caused the Government to remit the original EAJA award. It is revealing that the EAJA payment was sent out less than one month after the parties reached a tentative settlement and one month prior to settlement of the entire amount owed. This was not, as plaintiff contends, an "eleventh hour capitulation," Pl.'s Br. filed May 10, 2001, at 4. Instead, it was the logical conclusion of what became, as a product of plaintiff's refusal to provide or maintain sufficient records, rather protracted negotiations.[3] Thus, plaintiff has not sustained its burden to demonstrate that it was a prevailing party.

### 3. *Substantial justification*

The Government bears the burden of showing that its position was substantially justified. *See Helfer v. West,* 174 F.3d 1332, 1336 (Fed.Cir.1999). The "position" of the Government "means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based ...." 28 U.S.C.A. § 2412(d)(2)(D). A position "can be justified even though it is incorrect, and it can be substantially justified if a reasonable person could think it correct." *Doe v. United States,* 16 Cl.Ct. 412, 419 (1989).

The phrase "substantially justified" means "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations omitted). Thus, the trial court must "look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu v. United States,* 948 F.2d 711, 715 (Fed.Cir.1991) (footnote omitted); *see TGS Int'l, Inc. v. United States,* 983 F.2d 229, 229–30 (Fed.Cir.1993). "[T]he entirety of the conduct of the government," includes "the action or inaction by the agency prior to litigation." *Chiu,* 948 F.2d at 715. "This 'quintessentially discretionary' inquiry ... necessarily involves the determination of facts and the application of the substantially justified standard of the EAJA to those facts." *Stillwell v. Brown,* 46 F.3d 1111, 1113 (Fed.Cir.1995) (citations omitted); *see also Clemmons v. West,* 206 F.3d 1401, 1404

---

**3.** This factual situation is distinguishable from plaintiff's cited case, *Application Under the Equal Access to Justice Act, PetroElec Construction Co., Inc.,* 87–3 B.C.A. ¶ 20,111, 1987 WL 41277. There, the Board awarded fees finding that, "[a]l-though [plaintiff] provided supporting information sufficient for the Navy to estimate the costs of its first two claims ... the contracting officer denied these claims entirely."

(Fed.Cir.2000) (ruling that Federal Circuit was "precluded" from reviewing challenge to trial court's factual determination that Government's position was substantially justified). If the Government has not carried its burden, the court then determines what fee is reasonable. *See Commissioner, INS v. Jean,* 496 U.S. 154, 161, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).

Defendant has sustained the Government's burden in demonstrating that its position was substantially justified. The position taken during litigation was that the DLA was entitled to hold back the amount owed for the original EAJA award until it was clear that, after setting off an outstanding valid obligation, some amount still would be owing to the contractor in settlement of the termination for convenience.

■ Defendant cites a number of cases establishing the common law right to setoffs on debts owed. It is well-settled that "the Government may offset overpayments on one contract against amounts due on other contracts." *Keith v. United States,* 72 Ct.Cl. 236, 244, 1931 WL 2424 (1931). Moreover, a setoff "may be effected pending resolution of the controversy." *Mega Constr. Co. v. United States,* 29 Fed.Cl. 396, 445 (1993). While defendant has not offered any cases extending the offset principle to EAJA awards, doing so would require that defendant do more to establish that its position "had a reasonable basis in both law and fact." *Chiu,* 948 F.2d at 715. Plaintiff can cite to no authority demonstrating that this extension has been rejected.

■ Plaintiff relies on statements by the administrative judge, who presided over the dispute that generated the original EAJA award, expressing doubt as to whether that award could be held back. While negotiations were ongoing, plaintiff wrote to the administrative judge, who replied by letter of May 6, 1998, encouraging the parties to settle and stating his "personal opinion that setting off an award of attorney fees against the prevailing-party contractor's outstanding debts to the Government would appear to thwart the remedial objectives of EAJA." [4] Plaintiff cites several non-binding cases to refute defendant's contention that the right of setoff should not be applied to an EAJA award. However, these decisions, *Cornella v. Schweiker,* 728 F.2d 978 (8th Cir.1984); *Wedra v. Thomas,* 623 F.Supp. 272 (S.D.N.Y. 1985); and *Grand Boulevard Improvement Ass'n v. City of Chicago,* 553 F.Supp. 1154 (N.D.Ill.1982), stand for the proposition that the attorney for a prevailing party may collect attorneys' fees directly, rather than through the prevailing party itself and are not binding on the court. [5] The Federal Circuit has not adopted this reasoning, instead holding that "the prevailing party, and not its attorney, is entitled to receive [an attorneys' fees] award." *FDL Tech., Inc. v. United States,* 967 F.2d 1578, 1580 (Fed.Cir.1992). More to the point, the cases cited by plaintiff do not directly contravene the position taken by defendant, *i.e.,* that an EAJA award cannot be offset against amounts owed by a government contractor.

The court need not decide whether an EAJA award can be offset against a debt owed to the Government, an issue that calls for a careful balance between the stated objectives of the EAJA and the Government's common law right to retain monies owing to it. However, it is precisely this difficulty in judging which position is correct that supports a ruling that the Government was substantially justified in withholding payment of the original EAJA award until the parties

---

**4.** The administrative judge cited *Plant v. Blazer Fin. Servs.,* 598 F.2d 1357, 1366 (5th Cir.1979), which held that "in a truth-in-lending action an award of attorney's fees is not subject to setoff against the debtor's outstanding debt to the creditor." *Id.* at 1365.

**5.** Plaintiff's reliance on these cases is further distinguishable, because they do not stand for the proposition that attorneys' fees *should* be awarded to an attorney directly. Instead, a direct award depends on the factual circumstances of the case. *Cornella* held that representation by a pro bono attorney did not preclude recovery of EAJA fees. In *Wedra* the court ordered payment of attorneys' fees directly to the attorney because the plaintiffs were inmates at a correctional facility and "it would ... be foolish, if not imprudent, to direct that counsel's fees be paid directly to an inmate or inmates." *Id.* at 278. Similarly, the attorneys' fees in *Grand Boulevard Improvement* were awarded directly to plaintiffs' counsel, the Legal Assistance Foundation of Illinois.

had resolved the amount of the net payment due plaintiff on its termination for convenience.

### 4. *The claimed EAJA award amount*

Defendant cites two additional grounds for denying the second EAJA award to plaintiff. First, defendant claims that plaintiff has submitted attorneys' fees at hourly rates in excess of the statutory cap. Second, defendant argues that plaintiff has claimed amounts for work that was redundant, excessive or otherwise unnecessary. In a litigation tactic redolent of plaintiff's dealings with the DLA, plaintiff has chosen not to provide any response to these arguments.

The EAJA states that "attorney fees shall not be awarded in excess of $125[.00] per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C.A. § 2412(d)(2)(A); *see also Levernier Constr., Inc. v. United States,* 947 F.2d 497 (Fed.Cir. 1991) ("[T]he EAJA authorizes the award of the lower of either the prevailing market rate or [$125.00] per hour plus a [cost of living adjustment] or other enhancement."). Plaintiff has submitted claims at hourly rates from $140.00 to $200.00, with some work billed at as high as $375.00.[6] Plaintiff has not alleged any special factor or circumstance justifying a rate above the statutory limit, and the court also discerns no need for the increased rates. This is an additional basis for denying plaintiff's second EAJA award.

The court's examination of the submitted billing statements also reveals that some of the second EAJA award contains work that cannot be included in a reasonable fee. In determining the amount of a reasonable fee award, the court excludes hours that are excessive, redundant, or otherwise unnecessary. *Gavette v. OPM,* 788 F.2d 753, 754 (Fed.Cir.1986). Plaintiff has submitted work from three different law firms, all alleged to have worked to obtain the original EAJA award. However, three heads are not necessarily better than one, especially when, as

here, the latter two are doing research and investigation that the first already has performed. For example, Norman A. Steiger of Goldberg & Connolly was the attorney of record and performed research into plaintiff's original EAJA award over the four months preceding plaintiff's April 27, 2000 complaint. Attorneys of Kollman & Sheehan also performed this work almost a year earlier on March 15, April 14, May 5, 6, 24, 25, and 28, 1999. Plaintiff has not responded to defendant's contention that this work is duplicative, nor has plaintiff provided "reasonably specific documentation concerning the actual work done," *Community Heating & Plumbing Co. v. Garrett,* 2 F.3d 1143, 1146 (Fed.Cir.1993), sufficient to allow the court to determine whether the amounts claimed are reasonable. The court has no obligation to reconstruct these bills for plaintiff. *Naporano Iron & Metal Co. v. United States,* 825 F.2d 403, 405 (Fed.Cir.1987).

Additionally, plaintiff claims attorneys' fees for 184.72 hours of work on this case. While it is not the court's province to second-guess the amount of time a party spends litigating a case, plaintiff has done nothing to dispel the impression that this amount of time is excessive for a case that involved the filing of one complaint and one motion. Plaintiff also neglected to respond to defendant's arguments that amounts expended for filing, photocopying, facsimile, postage, courier, and online legal research are "costs" that plaintiff is not entitled to under the EAJA. This is another ground for denying plaintiff's claim.

### CONCLUSION

Accordingly, based on the foregoing, plaintiff's application for attorneys' fees under the EAJA is denied.

**IT IS SO ORDERED.**

No costs.

---

6. One firm submitted approximately 10 hours at an hourly rate of $75.00. The majority of plaintiff's claim rates are in the $140.00–to–$200.00–per–hour range.