# In the United States Court of Federal Claims

No. 12-197C
(Filed: June 7, 2013)

**********************************
\*
**360TRAINING.COM, INC.**              \*
\*
        Plaintiff,              \*      EAJA, 28 U.S.C. § 2412(d)(1)(A);
\*      substantial justification.
   v.              \*
\*
**THE UNITED STATES,**              \*
\*
        Defendant.              \*
\*
**********************************

## OPINION AND ORDER

On December 8, 2012, 360Training.com, Inc. ("360"), the Plaintiff in this bid protest matter, filed an Application (the "Application") under the Equal Access to Justice Act ("EAJA") and Rule 54 of the Rules of the Court of Federal Claims ("RCFC") for an award of fees and other expenses incurred in the litigation of the underlying matter.[1] Briefing was completed on March 25, 2013, when 360 submitted an amended application and related attachments. For the following reasons, 360's Application is GRANTED, in part, and DENIED, in part. The Court will withhold the entry of judgment until it has received the filings ordered below.

## I. Background

### a. The Outreach Training Program, Solicitation and Award Selection[2]

The Occupational Safety and Health Administration ("OSHA") issued a Request for Applications ("RFA") whereby it intended to authorize qualified vendors as online providers of OSHA Outreach Training Program courses ("outreach courses"). These outreach courses are designed to give workers an overview of the OSHA system, worker rights, and other basic safety and hazard information. Administrative Record ("AR") at 1.

---

[1] Intervenor Defendant Clicksafety.com, Inc. did not take part in the briefing on the EAJA Application.

[2] Additional details are available in the Court's opinion on the parties' cross-motions for judgment on the administrative record. *See 360Training.com, Inc. v. United States*, 106 Fed. Cl. 177 (2012) ("*360Training.com II*"). The Court's recitation here of the underlying facts is made to provide context for the following analysis only.

OSHA does not directly provide outreach courses to workers. Instead, the courses are given by independent, OSHA-authorized trainers. Beginning in 2001, OSHA began authorizing online outreach courses.

On March 29, 2011, OSHA issued the RFA via Notice in the Federal Register. The RFA invited interested organizations to submit applications to be authorized to deliver outreach courses. Successful applicants would enter into "5-year, nonfinancial cooperative agreements" with OSHA. The RFA placed no limits on the number of awardees, but instead provided that the number of organizations selected would be based on the quality of the applications it received. AR at 2.

The RFA set forth eligibility requirements, and it listed the selection criteria and evaluation process that OSHA would use to evaluate the applications and select awardees. There were four requirements for an organization to be eligible to apply, and eligible candidates were to be evaluated based on seven selection criteria. AR at 9. The RFA explained that OSHA would review course applications "against the criteria listed in this notice to determine which applicants best meet the stated requirements." AR at 11.

OSHA received 162 responsive applications from 47 different organizations. Due to the number of applications, OSHA opted to conduct a two-level review process, which was not expressly provided for in the RFA. Instead, such a process "can be detected only in an internal document, the Briefing Book." *360Training.com II*, 106 Fed. Cl. at 182. The first step in the process (the "Level 1 Review") required OSHA to review each application for the four eligibility criteria described in the RFA, as well as three "critical elements." The Level 1 Review resulted in a finding that 80 of the 162 applications did not meet "the established criteria," and they did not receive further review. AR 58, 149-54. In the Level 2 Review, OSHA evaluated the remaining applications for all of the selection criteria disclosed in the RFA.

On January 12, 2012, OSHA announced that ten different providers were being awarded with cooperative agreements, based on 25 selected applications. None of 360's applications were selected. According to the Briefing Book, OSHA found 360 ineligible because it was on probation at the time it submitted its applications.

### b. Procedural Background and the Court's Opinions

The Complaint in this matter was filed on March 27, 2012. On April 6, 2012, the Government filed a motion to dismiss for lack of subject matter jurisdiction. The Government's position was that the Tucker Act, 28 U.S.C. § 1491, limited this Court's bid protest jurisdiction to claims "in connection with a procurement or a proposed procurement." *See 360Training.com, Inc. v. United States*, 104 Fed. Cl. 575, 577 (2012) ("*360Training.com I*"). The Government argued that the cooperative agreement contemplated by the RFA was not a procurement under the Tucker Act. *Id.*

Shortly after 360 filed its bid protest, American Safety Council ("ASC") also challenged the same RFA. *See American Safety Council v. United States*, Civ. No. 12-210. Faced with the

2

same jurisdictional argument that the Government raised against 360, ASC decided to voluntarily dismiss its case here in order to pursue its claim in district court. In its motion to voluntarily dismiss, ASC "recognize[d] that a question exists as to whether this Court has jurisdiction to provide complete relief under the Tucker Act, 28 U.S.C. § 1491." *ASC*, Civ. No. 12-210, Docket No. 18 at 1.

The Court determined that the RFA was, in fact, a procurement. As worded in the Court's opinion, the Court "conclude[d] that the [RFA] was 'in connection with' the 'process of acquiring property or services' for OSHA," such that "jurisdiction under § 1491(b)(1) is proper." *360Training.com I*, 104 Fed. Cl. at 578. The motion to dismiss was denied and the case went forward. Not long after the Court denied the Government's motion to dismiss, the U.S. District Court for the District of Columbia transferred the parallel ASC matter back to this Court.

After some minor intervening disputes, the parties filed their cross-motions for judgment on the administrative record. Although the parties pressed a number of issues, the Court focused heavily on the evaluation process employed by OSHA; specifically, the Court questioned whether that process was consistent with the RFA and whether OSHA's decisions under that process were consistent with the evidence. *360Training.com II*, 106 Fed. Cl. at 186.

The Court's dispositive opinion provides a detailed analysis of the evaluation process, as it is disclosed in the RFA. It discussed the four eligibility requirements, as well as the seven selection criteria. *See id.* at 186-87. Based on the AR, the Court determined that the process disclosed in the RFA *could* encompass a two-level review: first, OSHA would analyze the disclosed eligibility requirements. Second, OSHA would score the applications on a 100-point scale based on the selection criteria. *See id.* at 188.

The Court gave significant consideration to the question of "past performance." The Court found that "past performance" appeared only once in the RFA—in the "Summary" section. *Id.* at 187. However, it assumed that certain "subcriteria" to one of the selection criteria qualified as a specification of past performance. This could plausibly make "past performance" part of the Level 2 Review, but OSHA did not treat it that way. Instead, OSHA inserted three "critical elements" into the Level 1 Review, one of which was past performance.

Even though it found the Level 1 Review flawed, the Court went on to analyze the Level 2 Review employed by OSHA. The final outcome of this level was supposed to be a numeric score, but the evaluations did not contain a point score assigned to each criterion, nor did the evaluations specify the weight given to each criterion. Instead, the ratings were descriptive. This was inconsistent with the RFA, which provided that each application would receive a score out of 100 and that each criterion would be weighted. *Id.* at 190. As the Court stated: "[T]he Court's examination of the administrative record causes it to conclude that, not only did OSHA not follow the RFA, but it did not even follow the process that it described in the Briefing Book; instead, it appears that OSHA may have followed another process that is altogether mysterious." *Id.*

The Court also identified four problems with OSHA's consideration of 360's applications specifically. First, OSHA had treated 360's past performance (in particular, its probation status)

3

as an *eligibility* requirement subject to Level 1 Review. Second, whatever evaluation OSHA had actually given to 360's applications, it was clear that "OSHA was focused almost exclusively on past performance." Third, OSHA's evaluation was irrational because it was inconsistent with the agency's "Level 1 Highlights," which indicated that 360 met all eligibility requirements to move onto Level 2 Review.[3] Finally, OSHA's judgments regarding 360's past performance were unsupported by the record. *Id.* at 193.

Based on these findings, the Court concluded that OSHA's review of the applications lacked a rational basis. *Id.* at 197. Because OSHA had indicated a willingness to take corrective action, the Court did not grant injunctive relief, but instead provided OSHA with a list of "*major* defects" that it found in OSHA's process. *360Training.com II*, 106 Fed. Cl. at 198 (emphasis in original). These defects included: OSHA's heavy reliance on past performance; the lack of "critical elements" in the RFA; and the lack of documentation in support of OSHA's final decision.

OSHA took corrective action to address the Court's concerns. Thereafter, the Court entered judgment on September 10, 2012.

## II.     Legal Standard

The EAJA is a fee-shifting statute that allows an eligible plaintiff to recover attorney's fees and costs in a successful action against the United States. *Davis v. Nicholson*, 475 F.3d 1360, 1363 (Fed. Cir. 2007). The EAJA provides, in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special awards make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

The Supreme Court has recognized that the EAJA "renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity." *Ardestani v. Immigration and Naturalization Serv.*, 502 U.S. 129, 137 (1991). As with any waiver of sovereign immunity, the statute must be strictly construed in favor of the Government. *Id.*

The Supreme Court has clarified the statute, holding that attorney's fees may only be awarded if: (1) the claimant is a "prevailing party"; (2) the Government's position was not "substantially justified"; (3) no "special circumstances make an award unjust"; and, (4) pursuant

---

[3] The Level 1 Highlights document was a spreadsheet created as part of OSHA's evaluation of the applications. *See 360Training.com II*, 106 Fed. Cl. at 190-91.

to 28 U.S.C. § 2412(d)(1)(B), that any fee statement must be submitted to the Court within 30 days of final judgment and must be supported by an itemized statement. *Comm'r, Immigration and Naturalization Serv. v. Jean*, 496 U.S. 154, 158 (1990). In addition to these requirements, a party must also be eligible—that is, the applicant must have had a net worth of less than $7,000,000 and no more than 500 employees at the time the action was filed. *See* 28 U.S.C. § 2412(d)(2)(B)(ii).

## III.    Discussion

360's brief in support of its Application argues, naturally, that it meets all of the elements necessary for it to recover under the EAJA. The Government's response is somewhat narrower: it asserts that its position was substantially justified, but in the alternative that the fees requested by 360 should be reduced by the Court. Because there is no dispute over a number of the issues, the Court finds that 360 is a prevailing party that meets the size requirements of the EAJA, that no special circumstances make an award unjust, and that this Application was timely filed. The Court is left only to decide whether the Government's position was substantially justified, and if not, whether the fees requested by 360 should be reduced.

### a.    Substantial Justification

A plaintiff is not entitled to an award under the EAJA if "the position of the United States was substantially justified." *See* 28 U.S.C. § 2412(d)(1)(A). "The Government bears the burden of showing that its position was substantially justified." *Freedom, N.Y., Inc. v. United States*, 49 Fed. Cl. 713, 717 (2001) (Miller, J.) (citing *Helfer v. West*, 174 F.3d 1332, 1336 (Fed. Cir. 1999)). "[S]ubstantially justified" means "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Government's "position" includes "both the underlying agency action that gave rise to the civil litigation and the arguments made during the litigation itself." *DGR Assocs., Inc. v. United States*, 690 F.3d 1335, 1340 (Fed. Cir. 2012) (citations omitted).

This standard does not raise a presumption that the Government's conduct was not substantially justified just because it lost the case. *See Scarborough v. Principi*, 541 U.S. 401, 415 (2004). As then-Judge Roberts stated, the law does not even require that the Government establish that it entered litigation with a "substantial probability of prevailing." *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1173 (D.C. Cir. 2005) (quoting *Spencer v. NLRB*, 712 F.2d 539, 557 (D.C. Cir. 1983)). Rather, a presiding court is to look at the totality of the Government's conduct and "make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991).

The Government does not argue strenuously that OSHA's pre-litigation actions were substantially justified. Nor would such a position withstand scrutiny: as the Court expressed in *360Training.com II*, much of the process OSHA followed was entirely unclear, *see 360Training.com II*, 106 Fed. Cl. at 190 ("it appears that OSHA may have followed another process that is altogether mysterious."), and even when the process was clear, it was plainly inconsistent with the process described in the RFA. *See id.* at 188-89 (describing the Level 1 Review and determining that factors undisclosed in the RFA had been used to determine

eligibility). The Court's opinion makes clear that there were substantial—and in many cases, obvious—flaws with the process OSHA employed in reviewing the applications.

Rather, the heart of the Government's opposition to the Application lies in its claimed substantial justification in litigating its position. The Government's arguments fall into two basic grounds: first, that because this Court's jurisdiction was unclear and such jurisdiction was a matter of first impression, its decision to litigate was substantially justified. Second, it argues that its position on the merits was also substantially justified. The Court holds that the Government's position on the issue of jurisdiction was substantially justified but not its position on the merits of the bid protest after the Court denied the motion to dismiss.

With respect to the former, the Government points to several parts of the AR in support of its contention that this Court's jurisdiction was not clear at the outset of the litigation: First, it notes that the RFA expressly stated that it was not a "procurement action." Second, the nonfinancial cooperative agreements expressly stated that "OSHA provides no funding to the online training provider for the conduct of OSHA Outreach Training Program online classes or any other purpose under this agreement." Gov't Resp. at 5. The overarching point at which the Government aims is that there was some degree of uncertainty as to whether actions taken with regard to this RFA were procurement actions reviewable pursuant to the Tucker Act.

360 argues that this is not really a case of first impression because, although the facts are new, controlling authority exists. 360 does acknowledge, however, that the "Government's objections were not frivolous," but it still concludes that "when reviewing the applicable law and facts, [the Government's objection] lacks reasonable basis in fact and law." 360 Reply at 10.

The Court, in its decision on the motion to dismiss, was unable to find a case directly on point; therefore, the question presented can fairly be characterized as one of first impression. Specifically, the Court was unable to find a Federal Circuit decision that held that an agency's proposal to authorize providers of services and to enter into cooperative agreements with them primarily for the purpose of supervision—where no funding was involved—amounted to a procurement. Indeed, the Court itself, during a status conference in the initial stage of the litigation, voiced some skepticism about whether it had jurisdiction. It is also significant that ASC voluntarily dismissed its case in the Court of Federal Claims and repaired to the district court. The fact that this Court (after delving into the law) later determined that OSHA's RFA was a procurement does not preclude a determination that the Government's position was substantially justified on this point.

As the Government has pointed out, the solicitation itself stated that it was not a procurement and that no funding was involved. Although the Federal Circuit has recognized that the definition of "procurement" in the Tucker Act is "very sweeping in scope," *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008), it was reasonable for the Government to argument that the Court should look to the definition of "procurement contract" in the Federal Grant and Cooperative Agreement Act of 1977 ("FGCAA"), 31 U.S.C. §§ 6301-6308 (2006), in order to limit the scope of a "procurement" under the Tucker Act. Finally, 360's argument in support of jurisdiction—that OSHA had a statutory duty to provide programs for education and training, *see* 29 U.S.C. § 670(c) (2006)—though strong, is reasonably susceptible

6

to the counter argument that this duty is not necessarily fulfilled by engaging in a procurement. So, from the time the Government filed its motion to dismiss until the Court denied the same, the Government's "overall position had a reasonable basis in both law and fact." *Chiu*, 948 F.2d at 715.

Turning to the merits phase of the case, the Court finds that the Government's position was completely unjustified. In support of its position on the instant Application, the Government highlights that 360 was a poor performer prior to issuance of the RFA. *See* Gov't Resp. at 9 ("Central to our position is the fact that 360 had a demonstrated record of poor performance as an online training provider."). It also argues that 360 still would not have scored favorably on a number of factors, including "organizational experience" and "staff experience and qualifications." 360, in turn, argues that the Government's litigation position was not supported by the facts, such that there was no substantial justification in pursuing litigation.

The Government's merits position centered on OSHA's use of an eligibility requirement that was, at best, disclosed in the RFA as a criterion, not an eligibility requirement. The Government's other major basis for argument was that 360 would have received poor ratings on a few other selection criteria, but this tells the Court nothing because OSHA completely failed to identify how those criteria were weighted in its analysis. For all the Court knows (since the AR lacks any indication), OSHA may have given the absolute lowest weight possible to the "organizational experience" and "staff experience and qualifications" criteria, such that they would have a negligible impact on the analysis, at most. This point highlights the extremely troubling problem that pervades this entire case: OSHA's review process was undertaken in a black box, from which the Court was only able to extract minimal pertinent evidence. The Government had to know, going into this litigation, that it had little to no substantive evidence in support of its position (with the scale tipping to the latter).

In sum, from the beginning, OSHA ignored its own RFA almost entirely. After the Court denied the Government's motion to dismiss, the Government continued to litigate the case with no reasonable basis in law or fact. The RFA was eventually withdrawn after the Court issued its decision in favor of 360; OSHA should have done this a lot earlier and saved itself, this Court, 360 and the public the time and expense of litigation. For these reasons, the Court will disallow fees pertaining to the motion to dismiss—during which time, the Government's overall position was substantially justified—but it will allow all other fees.

### b. 360's Requested Fees[4]

360 requests an award of $228,656.80 for fees associated with this bid protest. The Government contends that the requested fees should be reduced. Insofar as the Court has already disallowed fees for the motion to dismiss, the Court agrees with the Government. But the

---

[4] In its initial Application, 360 requested a total award of $280,301.57. Among the Government's arguments was a claim that 360 has applied the wrong Consumer Price Index ("CPI") multiplier to adjust for inflation. 360 evidently agreed with the Government's argument (the Court did too), because 360 applied the correct modifier in its amended application. Its new total request is for $241,703.11, costs inclusive. Thus, the Court does not address the CPI argument in the body of the opinion.

Government also contests a number of unsuccessful motions that relate to the merits phase of the case. In addition, the Government argues that 360 is not entitled to the fees it seeks for work pertaining to a "separate case involving a different plaintiff," referring to ASC's case.

As to its unsuccessful motions, 360 counters that the emphasis should not be on the success or failure of each motion, but on the totality of the lawsuit. 360 cites *Hensley v. Eckerhart*, 461 U.S. 424 (1983). *Hensley* states, in relevant part:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley*, 461 U.S. at 435. That excerpt ends with a footnote that reads, in part: "[A] plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Id.* at 435 n.11.

Based on the reasoning in *Hensley*, the Court finds that 360 is entitled to an award of fees for its unsuccessful motion to supplement and its two motions for clarification, all of which related to the merits phase of the case. Although 360 did not obtain the relief sought in each of these motions, the Court does not believe they were frivolous. Instead, the hours invested in these motions were "reasonably expended on the litigation" of the matter. The motions were filed in the pursuit of what was, ultimately, the precise result 360 sought. That 360's attorneys didn't bat 1.000 doesn't mean that they lost.

But the Court finds the Government's arguments with respect to ASC to be generally, although not entirely, persuasive. It appears that most of 360's bills relating to ASC were expended either in response to the motion to dismiss, or in preparation for filing in another court. With respect to the former, the Court has already denied fees relating to the motion to dismiss because the Government's position—at that time—was substantially justified. That ruling extends to any review of ASC files related to the motion to dismiss. With respect to the latter, the Court is persuaded by the Government's citation to *Lundin v. Mecham*, 980 F.2d 1450 (D.C. Cir. 1992), in which the D.C. Circuit rejected EAJA fees for work in related cases because those related cases "were neither an essential step in connection with, nor in any way controlling, in the prosecution of the suit" before it. *Id.* at 1461. This reasoning applies equally here, where ASC's district court case was "neither an essential step…, nor in any way controlling" on the instant litigation.

Some fees related to the ASC matter may, however, survive the Court's ruling. The Court has rejected fees pertaining to two categories of ASC-related fees: those which clearly pertain to the district court, and those which clearly pertain to the motion to dismiss. The Court

suspects, having reviewed the billing records, that a third category can be distilled from the ASC billings: 360's review of any ASC papers *in this Court* which do not pertain to the motion to dismiss. A party with knowledge that another case in the same court is addressing similar (or the same) issues reasonably expends hours on his own litigation by following the parallel case.

### IV.  Bill of Costs—Other Fees and Expenses

RCFC Rule 54(d) provides that "[c]osts—other than attorney's fees—should be allowed to the prevailing party to the extent permitted by law." 360 requests $13,046.31 for expenses reasonably incurred in connection with the litigation. The Government has not raised any objection to the reimbursement of costs, fees or expenses claimed by 360.

"To tax a requested cost, the judge, or the clerk as the court's designee, must find that it is a necessary litigation expense and that the amount to be taxed is reasonable." *Metropolitan Van and Storage, Inc. v. United States*, 101 Fed. Cl. 173, 202 (2011) (Horn, J.) (citing *Soler v. Waite*, 989 F.2d 251, 255 (7th Cir.), *reh'g denied* (7th Cir. 1993). A prevailing party is obligated to provide documentation of the costs it requests. *See Asphalt Supply & Serv., Inc. v. United States*, 75 Fed. Cl. 598, 602 (2007) (Horn, J.). RCFC 54(d)(1)(A) requires vouchers, receipts or invoices to be attached as exhibits.

360 has submitted numerous invoices and receipts in support of its request. These documents reflect that the costs requested all pertain to filing fees, travel, delivery services, research, telephone services or transcript production, all of which are taxable. *See Hopi Tribe v. United States*, 55 Fed. Cl. 81, 100 ("Under the EAJA, this court has awarded administrative expenses and costs such as recovery of copying, delivery services, travel, research services, telephone, and postage costs, as well as other expenses routinely incurred by attorneys, assuming they are documented and reasonably necessary to prosecution of the claim."). The Court concludes that 360's request for $13,046.31 in costs is reasonable.

### V.  Conclusion

In accord with the foregoing, 360's Application is GRANTED, in part, and DENIED, in part. First, the Court grants the Application for costs in the amount of $13,046.31. Second, the Court grants the Application for attorney's fees, except for fees associated with the Government's motion to dismiss and for fees pertaining to ASC's district court litigation. The Court denies 360's Application for attorney's fees associated with the Government's motion to dismiss and for fees associated with ASC's district court litigation.

As the parties are in a better position than the Court to quantify 360's attorney's fees associated with the merits of the case (i.e., excepting fees associated with the motion to dismiss or ASC's district court litigation), 360 and the Government shall meet and confer with a view to reaching an agreement between them on the dollar amount of the attorney's fees remaining in 360's Application after the excepted fees have been subtracted. The parties are also ORDERED to file a report to the Court indicating either their agreement along with the dollar amount agreed upon, or indicating their disagreement along with a statement including the amounts disagreed upon and an explanation of the reasons for the disagreement on or before July 1, 2013.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge